1
2
3
4 **UNITED STATES DISTRICT COURT**

5 **EASTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| 6 JAMES WOODRUFF, | No. 1:15-cv-03198-MKD |
| 7         Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY |
| 8   vs. | JUDGMENT AND DENYING DEFENDANT'S MOTION FOR |
| 9 COMMISSIONER OF SOCIAL | SUMMARY JUDGMENT |
| 10 SECURITY, | ECF Nos. 14, 22 |
| 11         Defendant. | |

12       BEFORE THE COURT are the parties' cross-motions for summary

13 judgment. ECF Nos. 14, 22. The parties have consented to proceed before a

14 magistrate judge. ECF No. 6. The Court, having reviewed the administrative

15 record and the parties' briefing, is fully informed. For the reasons discussed

16 below, the Court grants Plaintiff's motion (ECF No. 14) and denies Defendant's

17 motion (ECF No. 22).

18
19
20

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district

court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial

gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairments.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairments do not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairments to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If any impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairments do not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work

1    activities on a sustained basis despite his limitations, 20 C.F.R. § 416.945(a)(1), is

2    relevant to both the fourth and fifth steps of the analysis.

3        At step four, the Commissioner considers whether, in view of the claimant's

4    RFC, the claimant is capable of performing work that he has performed in the past

5    (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable of

6    performing past relevant work, the Commissioner must find that the claimant is not

7    disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of performing such

8    work, the analysis proceeds to step five.

9        At step five, the Commissioner considers whether, in view of the claimant's

10   RFC, the claimant is capable of performing other work in the national economy.

11   20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner

12   must also consider vocational factors such as the claimant's age, education and

13   past work experience.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant is capable of

14   adjusting to other work, the Commissioner must find that the claimant is not

15   disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to

16   other work, the analysis concludes with a finding that the claimant is disabled and

17   is therefore entitled to benefits.  20 C.F.R. § 416.920(g)(1).

18       The claimant bears the burden of proof at steps one through four above.

19   *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

20   step five, the burden shifts to the Commissioner to establish that (1) the claimant is

capable of performing other work; and (2) such work "exists in significant

numbers in the national economy."  20 C.F.R. § 416.920(c)(2); *Beltran v. Astrue*,

700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff applied for Title XVI supplemental security income (SSI) benefits

on April 11, 2012, alleging a disability onset date of November 1, 2009.  Tr. 156-

66.  The application was denied initially, Tr. 89-92, and on reconsideration, Tr. 96-

102.  Plaintiff appeared at a hearing before an Administrative Law Judge (ALJ) on

March 11, 2014.  Tr. 40-59.  On April 21, 2014, the ALJ denied Plaintiff's claim.

Tr. 21-35.

At step one, the ALJ found that Plaintiff has not engaged in substantial

gainful activity since the date of application, April 11, 2012.  Tr. 23.  At step two,

the ALJ found Plaintiff has the following severe impairments: chronic obstructive

pulmonary disease (COPD)/asthma; personality disorder; anxiety; and depression.

Tr. 23.  At step three, the ALJ found that Plaintiff does not have an impairment or

combination of impairments that meets or medically equals a listed impairment.

Tr. 24.  The ALJ then concluded that Plaintiff has the RFC to perform medium

work, with the following limitations:

> He can lift and/or carry 25 pounds frequently, and 50 pounds
> occasionally.  He can stand and/or walk for six hours in an eight-hour
> workday.  He can sit for six hours in an eight-hour workday.  He

should have less than occasional interaction with the public. He should avoid smoke, dust, fumes and environmental irritants.

Tr. 28. At step four, the ALJ found that Plaintiff is able to perform relevant past work as a truck driver. Tr. 34. In the alternative, the ALJ found at step five that there are other jobs that exist in significant numbers in the national economy that Plaintiff could perform within his assessed RFC. Tr. 34-35. On that basis, the ALJ concluded that Plaintiff is not disabled as defined in the Social Security Act. Tr. 35.

On September 22, 2015, the Appeals Council denied review, Tr. 1-6, making the Commissioner's decision final for purposes of judicial review. *See* 42 U.S.C. 1383(c)(3); 20 C.F.R. § 416.1481.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying his SSI benefits under Title XVI of the Social Security Act. ECF No. 14. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly weighed the medical opinion evidence; and

2. Whether the ALJ properly discredited Plaintiff's symptom reports.

ECF No. 14 at 1.

**DISCUSSION**

**A.    Medical Opinion Evidence**

Plaintiff faults the ALJ for discounting the medical opinions of Natalia Luera, M.D., Daniel McCabe, Ph.D., Steven Woolpert, M.S., L.M.H.P., Rob Garner, M.A., and Jeff Teal, Ph.D.  ECF No. 14 at 4-18.

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician.  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  Likewise, the ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician.  *Id*.

When a treating physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).  When a treating physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion.  *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).  Likewise, when an examining

physician's opinion is not contradicted by another physician, the ALJ may reject

the opinion only for "clear and convincing" reasons, and when an examining

physician's opinion is contradicted by another physician, the ALJ is only required

to provide "specific and legitimate reasons" to reject the opinion. *Lester*, 81 F.3d

at 830-31.

The specific and legitimate standard can be met by the ALJ setting out a

detailed and thorough summary of the facts and conflicting clinical evidence,

stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881

F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer his

conclusions, he "must set forth his interpretations and explain why they, rather

than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-422 (9th Cir.

1988).

1.    *Natalia Luera, M.D.*

On May 7, 2010, Dr. Luera completed a Physical Evaluation form for the

Washington State Department of Social and Health Services (DSHS), in which she

limited Plaintiff to sedentary work for at least twelve months. Tr. 434-37.

On January 24, 2012, Dr. Luera completed a form for DSHS indicating that

Plaintiff could stand for six hours in an eight hour work day, sit for prolonged

periods with occasional pushing and pulling of arm or leg controls, and sit for most

of the day. Tr. 431-32. She also opined that Plaintiff could lift a maximum of

1  twenty pounds and frequently lift or carry ten pounds.  Tr. 432.  She stated that she

2  would expect these limitations to last six months.  *Id*.

3        On May 30, 2013 and November 7, 2013, Dr. Luera completed

4  questionnaires in which she limited Plaintiff to sedentary work and opined that if

5  Plaintiff were attempting to work a forty hour per week schedule that, more

6  probable than not, he would miss three days of work in an average month.  Tr. 452-

7  54, 462-64.

8        On January 29, 2014, Dr. Luera limited Plaintiff to sedentary work and

9  estimated that the limitation would persist with available medical treatment for

10  twelve months.  Tr. 622-24.

11        In his decision, the ALJ specifically addressed the May 2010, January 2012,

12  November 2013, and January 2014 opinions, identifying them by date and citation

13  to the record.  Tr. 31.  The ALJ then stated that he gave these opinions "little

14  weight" because (1) Dr. Luera did not take into account Plaintiff's abilities if he

15  took his medications as prescribed, (2) Dr. Luera did not take into account

16  Plaintiff's abilities if he stopped smoking cigarettes, and (3) Dr. Luera's opinion

17  was inconsistent with Plaintiff's reported daily activities.  *Id*.

18        First, Plaintiff challenges the ALJ's decision for not addressing the May

19  2013 opinion.  ECF No. 14 at 17-18.  However, the citation to the November 2013

20  opinion, Exhibit 10F at pages 2 and 3, is actually a citation to the May 2013

opinion.  Tr. 31, 452-54.  The November 2013 opinion is contained in Exhibit 12F.

*See* Tr. 462-64.  A review of the opinions themselves reveals that the two opinions

are essentially the same: both limit Plaintiff to sedentary work and state that

Plaintiff would miss an average of three days per month if attempting to work a

forty hour work week.  Tr. 452-54, 462-64.  Additionally, no treatment occurred

between the two opinions.  Both list the last date of treatment as January 30, 2013.

Tr. 452, 462.  While it is error to disregard an treating physician's opinion without

legally sufficient reasons, *Lester*, 81 F.3d at 830-31, any error resulting from the

ALJ's failure to list the May 2013 opinion amongst Dr. Luera's other opinions

would be harmless considering the opinion was cited in the decision and it was the

same as the discussed November 2013 opinion.  Therefore, had it been discussed

by date it likely would not have altered the ALJ's determination.  *See Tommasetti*

*v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (An error is harmless when "it is

clear from the record that the . . . error was inconsequential to the ultimate

nondisability determination.").

   While the ALJ's failure to discuss the May 2013 opinion by date may not

have been harmful, the reasons the ALJ provided for rejecting Dr. Luera's opinions

were not supported by substantial evidence and not legally sufficient.  His first two

reasons, that Dr. Luera failed to take into account Plaintiff's abilities if he took his

medications as prescribed and that she failed to take into account Plaintiff's

1    abilities if he stopped smoking cigarettes, are not supported by substantial

2    evidence.

3         In Dr. Luera's final opinion dated January 29, 2014, she opined that Plaintiff

4    was limited to sedentary work and that this limitation "will persist with available

5    medical treatment" for twelve months.  Tr. 624.  In the evaluation that

6    accompanied the opinion, she recommended that Plaintiff quit smoking entirely

7    and counseled him to take his Spiriva daily in addition to his albuterol inhaler and

8    nebulizer as needed.  Tr. 627.  All of Dr. Luera's opinions during the adjudicated

9    period, from April 11, 2012 through the ALJ's decision, also limited Plaintiff to

10   sedentary work.  Tr. 434-37, 452-54, 462-64.  Therefore, Dr. Luera did consider

11   Plaintiff's abilities if he took his medications as prescribed and stopped smoking

12   and it did not change her opinion during the adjudicated period.  As such, these

13   reasons are not supported by substantial evidence.

14        The ALJ's final reason for rejecting Dr. Luera's opinions, that they were

15   inconsistent with Plaintiff's daily activities, is not legally sufficient.  The ALJ

16   stated that Dr. Luera's opinions were inconsistent with Plaintiff's "reports that he

17   gardens most days, performs several household chores, and can weld and clean a

18   pellet stove," Tr. 31 (citing to Exhibits 5E and 18F).  Exhibit 5E is a May 2013

19   Function Report in which Plaintiff stated that "I load [the] dishwasher and do some

20   laundry sometimes."  Tr. 211.  He noted that "[i]t only takes a few minutes to load

[the] dishwasher." *Id*.  Plaintiff stated that he does as little house or yard work as possible.  Tr. 212.  Exhibit 18F contains a February 6, 2014 evaluation in which he identifies his activities of daily living as "[h]e enjoys gardening.  He does do some welding.  He does chores around the house including dishwashing and keeping the pellet stove going."  Tr. 620.  Here, the ALJ failed to provide how these chores were inconsistent with Dr. Luera's repeated opinion that Plaintiff was limited to sedentary work.  The Ninth Circuit has held that a claimant's ability to assist with some household chores is not determinative of disability.  *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987).  The ALJ is required to do more than offer his conclusions, he "must set forth his interpretations and explain why they, rather than the doctors', are correct."  *Embrey*, 849 F.2d at 421-22.  Here, the ALJ failed to provide how these occasional chores were inconsistent with the definitions of sedentary work opined by Dr. Luera.  Therefore, this reason fails to meet even the specific and legitimate standard.  As a result, the ALJ erred in his treatment of Dr. Luera's opinions.  This case is remanded for the ALJ to hold a new hearing to properly consider all of Dr. Luera's opinions.

 2. *Daniel McCabe, Ph.D.*

On February 27, 2012, Dr. McCabe completed a Psychological/Psychiatric Evaluation in which he opined that Plaintiff had "difficulty sustaining himself in tasks and with his concentration as well as some of his personality traits, which

have a narcissistic tendency, which impair his ability to work." Tr. 337.  He also

stated that Plaintiff "likely is capable of contributing to a job but his personality

structure would make it hard for him to be an employee and he lacks the

motivation to work for himself currently."  *Id*.  Dr. McCabe also opined that

Plaintiff "is capable of reading at high level, he is capable of playing complex

video games, he is capable of doing some simple food preparation.  He is capable

to operating a TV as well as a movie player."  *Id*.  He gave Plaintiff a GAF score of

55.  Tr. 334.

On February 6, 2014, Dr. McCabe completed a Psychological/Psychiatric

Evaluation and a Medical Source Statement concerning Plaintiff, in which he

opined that Plaintiff had a severe limitation in the abilities to perform activities

within a schedule, maintain regular attendance, and be punctual within customary

tolerances without special supervision and complete a normal work day and work

week without interruptions from psychologically based symptoms.  Tr. 618-20.  He

opined that Plaintiff had a marked limitation in the abilities to adapt to changes in a

routine work setting, communicate and perform effectively in a work setting, and

maintain appropriate behavior in a work setting.  Tr. 620.  He also stated that

Plaintiff had a moderate limitation in the abilities to understand, remember, and

persist in tasks by following very short and simple instructions as well as detailed

instructions, learn new tasks, perform routine tasks without special supervision,

1   make simple work-related decisions, be aware of normal hazards and take

2   appropriate precautions, ask simple questions or request assistance, and set realistic

3   goals and plan independently.  *Id*.  Finally, he gave Plaintiff a GAF score of 50.

4   *Id*.

5          In his decision, the ALJ stated that he adopted Dr. McCabe's opinions, in

6   part.  Tr. 31.  He concluded that Dr. McCabe's 2012 opinion, that Plaintiff reads at

7   a high level, plays complex video games, completes simple food preparation, and

8   operates a TV, equated to the ability to complete complex tasks.  Tr. 31.  He found

9   the limitations resulting from Plaintiff's personality traits and narcissistic

10  tendencies to be vague.  *Id*.  He found that the opined limitations in concentration

11  and Plaintiff's GAF score of 50 were inconsistent with Dr. McCabe's finding that

12  Plaintiff was capable of performing complex tasks and inconsistent with his daily

13  activities of gardening and welding.  *Id*.

14         In stating that he adopted Dr. McCabe's opinion in part, the ALJ failed to

15  discuss the medical source statement provide with the 2014 evaluation.  Tr. 31.

16  This medical source statement included limitations in functional areas the ALJ

17  failed to address while discussing Dr. McCabe's opinion and failed to include in

18  the RFC determination.  An ALJ is required to provide either clear and convincing

19  or specific and legitimate reasons for rejecting the opinion of an examining

20  physician.  *Lester*, 81 F.3d at 830-31.  Therefore, the ALJ's failure to consider the

1 | medical source statement from the 2014 evaluation is error.  Upon remand the ALJ

2 | is to properly consider all of Dr. McCabe's opinions.

3 |        *3.*       *Jeff Teal, Ph.D., Steven Woolpert, M.S., L.M.H.P., and Rob*

4 | *Garner, M.A.*

5 |        Plaintiff also challenges the ALJ's treatment of Dr. Teal, Mr. Woolpert, and

6 | Mr. Garner.  Considering the case is being remanded for the ALJ to properly

7 | consider the opinions of Dr. Luera and Dr. McCabe, the ALJ is also instructed on

8 | remand to readdress the remaining medical source opinions contained in the

9 | record.

10 | **B.**    **Adverse Credibility Finding**

11 |        Plaintiff contests the ALJ's adverse credibility determination in this case.

12 | ECF No. 14 at 18-20.

13 |        An ALJ engages in a two-step analysis to determine whether a claimant's

14 | testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must

15 | determine whether there is objective medical evidence of an underlying

16 | impairment which could reasonably be expected to produce the pain or other

17 | symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).

18 | "The claimant is not required to show that [his] impairment could reasonably be

19 | expected to cause the severity of the symptom [he] has alleged; [he] need only

20 |

show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester*, 81 F.3d at 834); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r, of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but he found Plaintiff less than fully credible concerning the intensity, persistence, and limiting effects of these symptoms. Tr. 29. The ALJ reasoned that Plaintiff was less than fully credible because (1) the medical record did not support the severity of his alleged

1  limitations, Tr. 29, (2) he failed to follow treatment advice or take prescribed

2  medications, Tr. 29, 33, (3) his reported activities of daily living were inconsistent

3  with the severity of his alleged limitations, Tr. 33, and (4) his failure to report

4  earnings was equivalent to theft, Tr. 33-34.

5         *1.*    *Inconsistent with Medical Record*

6         The ALJ gave less weight to Plaintiff's statements because the medical

7  record did not substantiate Plaintiff's allegations of disabling limitations.  Tr. 29.

8  Medical evidence is a relevant factor in determining the severity of a claimant's

9  pain and its disabling effects.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir.

10  2001); 20 C.F.R. § 416.929(c)(2); *see also* S.S.R. 96-7p.[1]

11         As an initial matter, because the medical evidence was not properly

12  evaluated, on remand the ALJ should also reconsider the credibility finding.

13  Whether a proper evaluation of the medical opinions can be reconciled with the

14

15  _____

16       [1]S.S.R. 96-7p was superseded by S.S.R. 16-3p effective March 16, 2016.

17  The new ruling also provides that the consistency of a claimant's statements with

18  objective medical evidence and other evidence is a factor in evaluating a

19  claimant's symptoms.  S.S.R. 16-3p at *6.  Nonetheless, S.S.R. 16-3p was not

20  effective at the time of the ALJ's decision and therefore does not apply in this case.

1  ALJ's existing adverse credibility determination is for the Commissioner to decide

2  in the first instance.

3      Additionally, the ALJ acknowledged that Plaintiff was diagnosed with

4  obstructive pulmonary disease and asthma, however, he found that Plaintiff denied

5  experiencing any physical complaints from these impairments during the

6  adjudicated period because Plaintiff denied having any chest pain and only

7  reported minimal breathing problems. Tr. 29. Likewise, the ALJ found that the

8  medical record did not support the severity of Plaintiff's mental health claims

9  because he reported a good mood and denied suicidal ideation. *Id*. However, the

10  evidence the ALJ cited were symptom statements and not medical reports. *See* 20

11  C.F.R. § 416.913(b).

12      While Plaintiff's symptom statements to providers does not constitute

13  medical reports, they can demonstrate inconsistent reporting in the record. In

14  determining a claimant's credibility, the ALJ may consider "ordinary techniques of

15  credibility evaluation, such as the claimant's reputation for lying, prior inconsistent

16  statements . . . and other testimony by the claimant that appears less than candid."

17  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). However, the ALJ failed to

18  demonstrate how Plaintiff's denial of specific symptoms to medical providers was

19  inconsistent with his other statements in the record. As such, this reason does not

20  meet the specific, clear and convincing standard.

### 2.    Failure to Follow Treatment

Next, the ALJ discredited Plaintiff's symptom claims because Plaintiff failed to take prescribed medication and failed to stop smoking.

Noncompliance with medical care or unexplained or inadequately explained reasons for failing to seek medical treatment can cast doubt on a claimant's subjective complaints. 20 C.F.R. § 416.930; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

Plaintiff argues that the ALJ failed to comply with S.S.R. 82-59, which provides that an ALJ may deny benefits to a claimant who has a disability if the claimant unjustifiably fails to follow prescribed treatment that is "clearly expected to restore capacity to engage in any [substantial gainful activity]." ECF No. 14 at 20. However, this rule does not apply when a claimant's failure to seek treatment is a factor of the ALJ's credibility determination. *See Molina*, 674 F.3d at 1114 n.6. As such, Plaintiff's failure to take prescribed medications meets the specific, clear and convincing standard.

The ALJ also repeatedly referred to Plaintiff's failure to quit smoking as a failure to follow treatment advice. Tr. 29, 33. A claimant's failure to comply with a diagnosis to quit smoking "is an unreliable basis on which to rest a credibility determination." *Shramek v. Apfel*, 226 F.3d 809, 813 (7th Cir. 2000) ("Given the addictive nature of smoking, the failure to quit is as likely attributable to factors

1  unrelated to the effect of smoking on a person's health."  Even though Plaintiff's

2  smoking may have contributed to his symptoms, the fact that he did not quit as

3  directed by his providers does not necessarily undermine his credibility.  The Court

4  concludes that Plaintiff's failure to quit smoking is not a specific, clear and

5  convincing reason for discounting Plaintiff's credibility.

6      *3.    Reported Daily Activities*

7      Here, the ALJ determined that Plaintiff's reported daily activities of

8  gardening, doing welding work, washing dishes, washing laundry, preparing

9  meals, shopping, performing household chores, and cleaning a pellet stove were

10  inconsistent with the alleged severity of Plaintiff's symptoms.  Tr. 33.

11      A claimant's daily activities may support an adverse credibility finding if (1)

12  the claimant's activities contradict his other testimony, or (2) "the claimant is able

13  to spend a substantial part of his day engaged in pursuits involving performance of

14  physical functions that are transferable to a work setting."  *Orn*, 495 F.3d at 639

15  (citing *Fair*, 885 F.2d at 603).  "The ALJ must make 'specific findings relating to

16  [the daily] activities' and their transferability to conclude that a claimant's daily

17  activities warrant an adverse credibility determination."  *Id*. (quoting *Burch v.*

18  *Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)).  A claimant need not be "utterly

19  incapacitated" to be eligible for benefits.  *Fair*, 885 F.2d at 603.

20

1    The ALJ failed to demonstrate how these activities contradicted Plaintiff's

2    other testimony or that he was able to spend a substantial part of his day engaged

3    in these activities and that these activities are transferable to a work setting.

4        *4.    Failure to Report Earnings*

5        The ALJ found that Plaintiff's testimony that he had worked from 1997 to

6    2009 as a truck driver and had failed to report his earnings as an evasion of paying

7    taxes, which reflected negatively on Plaintiff's credibility.  Tr. 33-34.

8        Plaintiff did not raise any objecting to this determination in his briefing.

9    ECF No. 14 at 18-20.  The Court ordinarily will not consider matters on appeal that

10   are not specifically and distinctly argued in an appellant's opening brief.  *See*

11   *Carmickle v. Comm'r, Soc. Sec. Admin*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).

12   Because Plaintiff failed to provide adequate briefing, the Court declines to consider

13   the issue.

14       While the ALJ may have provided some legally sufficient reasons for

15   discrediting Plaintiff's symptom statements, the case is being remanded for

16   additional proceedings to allow the ALJ to properly address the medical opinions.

17   Therefore, the ALJ is further instructed to readdress Plaintiff's credibility on

18   remand.

19

20

1

**REMEDY**

2        The decision whether to remand for further proceedings or reverse and

3  award benefits is within the discretion of the district court.  *McAllister v. Sullivan*,

4  888 F.2d 599, 603 (9th Cir. 1989).  An immediate award of benefits is appropriate

5  where "no useful purpose would be served by further administrative proceedings,

6  or where the record has been thoroughly developed," *Varney v. Secretary of Health*

7  *& Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused

8  by remand would be "unduly burdensome," *Terry v. Sullivan*, 903 F.2d 1273, 1280

9  (9th Cir. 1990).  *See also Garrison*, 759 F.3d at 1021 (noting that a district court

10  may abuse its discretion not to remand for benefits when all of these conditions are

11  met).  This policy is based on the "need to expedite disability claims."  *Varney*,

12  859 F.2d at 1401.  But where there are outstanding issues that must be resolved

13  before a determination can be made, and it is not clear from the record that the ALJ

14  would be required to find a claimant disabled if all the evidence were properly

15  evaluated, remand is appropriate.  *See Benecke v. Barnhart*, 379 F.3d 587, 595-96

16  (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

17        In this case, it is not clear from the record that the ALJ would be required to

18  find Plaintiff disabled if all the evidence were properly evaluated.  Further

19  proceedings are necessary for the ALJ to properly address the medical source

20  opinions and determine Plaintiff's credibility regarding his symptom reporting in

accord with S.S.R. 16-3p. The ALJ will also need to supplement the record with any outstanding medical evidence and elicited testimony from a medical, psychological, and vocational expert.

**CONCLUSION**

**IT IS ORDERED:**

1. Defendant's motion for summary judgment (ECF No. 22) is **DENIED.**

2. Plaintiff's motion for summary judgment (ECF No. 14) is **GRANTED**, and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order and pursuant to sentence four of 42 U.S.C. § 405(g).

3. Application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order, enter **JUDGMENT FOR THE PLAINTIFF**, provide copies to counsel, and **CLOSE THE FILE.**

DATED this 17th day of March, 2017.

s/Mary K. Dimke
MARY K. DIMKE
U.S. MAGISTRATE JUDGE